IN RE INTEREST OF TORREY B., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. TORREY B., APPELLEE, AND NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, INTERESTED PARTY, APPELLANT.

577 N.W.2d 310

Filed March 17, 1998.   Nos. A-97-523, A-97-524, A-97-682.

Don Stenberg, Attorney General, Royce N. Harper, and Sam Kaplan, Special Assistant Attorney General, for appellant.

No appearance for appellees.

HANNON, SIEVERS, and INBODY, Judges.

HANNON, Judge.

This opinion covers three appeals by the Nebraska Department of Health and Human Services (Department) involving the adjudication and disposition of one juvenile, Torrey B. All three appeals were perfected before our opinion *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997), was released, wherein we held that a juvenile court's jurisdiction over an adjudicated minor continues after the juvenile is committed to a youth rehabilitation and treatment center (YRTC) and that the juvenile court does not have jurisdiction over the Office of Juvenile Services (OJS), which is part of the Department, in placing, managing, or discharging the committed juvenile. To the extent that the issues previously decided in *In re Interest of David C., supra*, are raised by these appeals, they need not be reconsidered in this opinion.

In *In re Interest of David C., supra*, we found plain error in the juvenile court's failure to adequately advise the juvenile of his right to counsel in a probation revocation proceeding, and therefore we were obligated to overturn the juvenile court's order finding that the juvenile had violated the terms of his probation. In this case, we again find plain error: this time, in the juvenile court's failure to advise the juvenile of his right to counsel and additionally in the juvenile court's revocation of the juvenile's probation in contravention of statutory procedure. More significantly, on the basis of plain error, we find that the juvenile court's adjudication proceeding in one case was so inadequate as to not give the juvenile court jurisdiction.

## I. CASE AND APPEAL NUMBERS

For clarity's sake, we now briefly explain the procedural background. Briefly summarized, the three appeals before this court arise from two different juvenile court cases, cases Nos. 4126, which originated in Douglas County, and 4100, which originated in Dodge County. In both cases, the juvenile was charged with several counts of criminal mischief. The predisposition report, which was not included in the three bills of exceptions, reveals that the charges stemmed from the events of December 1, 1996, when the juvenile and a friend allegedly went around eastern Nebraska shooting windows out of vehi-

cles. Cases Nos. A-97-523 and A-97-524 are appeals by the Department from an April 17, 1997, dispositional order in cases Nos. 4126 and 4100, respectively. Case No. A-97-682 is an appeal by the Department from a June 23 order in case No. 4126.

## II. PROCEDURAL BACKGROUND

### 1. CASE NO. 4126

On December 3, 1996, a deputy Douglas County Attorney filed a petition in the separate juvenile court of Douglas County, alleging that on December 1, the juvenile had committed 23 counts of intentionally or recklessly causing damage of more than $100 but less than $300 to the personal property of others, in violation of Neb. Rev. Stat. § 28-519 (Reissue 1995) (criminal mischief). The petition also charged the juvenile with one count of possession of marijuana weighing 1 ounce or less and with one count of possession of drug paraphernalia. On February 18, 1997, the juvenile, with counsel and after an adequate advisement of his rights, admitted to eight of the criminal mischief charges. The State dismissed the remaining charges. The court found the juvenile to be a child as described in Neb. Rev. Stat. § 43-247(1) and (2) (Cum. Supp. 1996), although we observe that the allegations to which the juvenile admitted were misdemeanors only and thus that the juvenile should have been adjudicated under only § 43-247(1). Having found that the juvenile and his parents resided in Dodge County, the court then ordered the matter be transferred to Dodge County Court, sitting as a juvenile court, for dispositional and all other proceedings.

### 2. CASE NO. 4100

Case No. 4100 originated by petition filed December 26, 1996, in the Dodge County Juvenile Court. The petition alleged five more violations of § 28-519, all occurring in Dodge County on December 1. On January 29, 1997, the juvenile admitted the allegations. The court found that he was a juvenile as described in § 43-247(1) and placed him on "indefinite probation" with placement in his parents' home. The accompanying order of probation provided that "the court has placed you on probation . . . for a period of **indefinite** from **01-29-97** to **indefinite** after a hearing in which more drastic action might have been taken."

Such accompanying order provided 14 conditions of the juvenile's probation. The adjudication order reveals that the matter was then continued until March 5.

### 3. Proceedings Under Both Cases Nos. 4126 and 4100

The court's journal of the March 5, 1997, hearing contains both case numbers and orders an evaluation of the juvenile at the YRTC-Geneva. It also sets the matter for further hearing on April 9.

The order of the April 9, 1997, hearing, filed April 17, also contains both case numbers and is almost identical to the order rendered by the same juvenile court in *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997). Basically, it (1) committed the juvenile to the YRTC-Kearney (in case No. 4100 but not case No. 4126), (2) announced that in both cases it was retaining the power to make further dispositions upon the juvenile's completion of treatment at the YRTC, and (3) directed OJS as it did in *In re Interest of David C., supra.* This order, which was captioned "Case # 4100/4126," is the subject of the appeals in A-97-523 (case No. 4126) and A-97-524 (case No. 4100).

### 4. Action After Appeal

On June 6, 1997, the court filed a notice informing the juvenile and his parents that they were to appear before the court on June 16 for a hearing. The notice was captioned "Case # 4100/4126." The Department then filed a special appearance and a motion to appoint counsel for the juvenile in case No. 4126. (We note that both documents filed by the Department were originally captioned "Case # 4100/4126," but that the number "4100" was later crossed out.)

The bill of exceptions from the June 16, 1997, hearing reveals that the deputy county attorney, the juvenile, the juvenile's parents, the probation officer, and counsel for OJS were all present. No evidence was adduced at that hearing. However, the judge made clear that in case No. 4100, he had committed the juvenile to the YRTC, the juvenile had subsequently been paroled by the YRTC, and the court was taking no further action in that case.

With regard to case No. 4126, the court stated that it had not placed the juvenile at the YRTC and further that the juvenile was being placed on probation on a temporary basis, to be reviewed at a later time. The judge asked the probation officer, "[S]ince this is an on-going disposition regarding [the juvenile] I would ask that you submit a proposed probation plan that would mesh with the — the arrangements and recommendations from YRTC, Kearney."

The resulting order, filed June 23, 1997, was captioned "Case # 4126" and provided for temporary placement of the juvenile with his parents, subject to review and modification by the probation office. It also provided that "[t]he juvenile shall remain on an on-going disposition reviewable from time to time by the Court. Supervision shall continue the District #16 Probation Office and the Office of Juvenile Services, Juvenile Parole Division." The order ends as follows: "Any change in placement of the juvenile by the Nebraska Health and Human Services, Office of Juvenile Services or the District #16 Probation Office must be reported to the Court immediately. This matter is continued for further disposition to **June 25, 1997 at 11:15 a.m.**"

Also filed on June 23, 1997, was a probation order signed by the judge, the juvenile, and the juvenile's father on June 16. It is essentially identical to the one filed on February 7 in case No. 4100. The Department's appeal from "a judgment and order of the County Court of June 16, 1997," constitutes case No. A-97-682.

### III. ASSIGNMENTS OF ERROR

In case No. A-97-524 (appeal in case No. 4100), the Department contends that the trial court erred in its order of April 17, 1997, by (1) requiring the juvenile to return to juvenile court for further disposition after being released on parole from the YRTC-Kearney, (2) professing to retain jurisdiction of the matter subject to the juvenile's completing treatment at the YRTC-Kearney, (3) requiring OJS to submit a treatment and placement plan to the court prior to releasing the juvenile from the YRTC and requiring OJS to share information with the local probation office, (4) requiring OJS to notify the court prior to the juvenile's release from the YRTC, (5) requiring the juvenile

to return to court after he was released on parole from the YRTC, and (6) requiring OJS to submit monthly progress reports to the court.

Similar assignments of error were all considered and ruled upon in *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997), wherein we held that a juvenile court does not have the power to order OJS to submit a treatment and placement plan prior to a juvenile's release, to notify the court before parole, to report changes in placement to the court, or to submit monthly progress reports. Those holdings would require the reversal of the orders appealed from in cases Nos. A-97-523 and A-97-524. However, in this case, we find more egregious plain error in several of the court's actions which requires more directions than merely to set aside the orders appealed from.

In cases Nos. A-97-523 and A-97-682 (appeals in case No. 4126), which were combined for briefing, the assignments of error are identical to those in case No. A-97-524. The assignments of error in case No. A-97-523 are identical to those in case No. A-97-524. However, in case No. A-97-524, there is no assignment of error which concerns the Department's argument, found in the discussion in its brief, that the juvenile court did not have jurisdiction to enter the order of "June 25, 1997." Brief for appellant in case No. A-97-524 at 12. In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed. *Billups v. Troia*, 253 Neb. 295, 570 N.W.2d 706 (1997). Moreover, to the extent that such arguments were made in the juvenile court, they cannot be considered by this court as plain error. Plain error is error plainly evident from the record and not complained of at trial. *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995). We also observe that the journal of the action of June 16 was filed on June 23 and further that such journal refers to further disposition on June 25, 1997, at 11:15 a.m. However, we can find no order or journal entry which shows any action taking place on June 25. Thus, to the extent that the Department's argument concerns judicial action taking place on June 25, we do not consider it.

## IV. STANDARD OF REVIEW

In reviewing questions of law, an appellate court in proceedings under the Nebraska Juvenile Code reaches a conclu-

sion independent of the lower court's ruling. *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997).

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the lower courts. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997); *In re Interest of Jeffrey R.*, 251 Neb. 250, 557 N.W.2d 220 (1996).

■ Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Miller v. Brunswick*, 253 Neb. 141, 571 N.W.2d 245 (1997).

## V. ANALYSIS

### 1. Case No. A-97-524 (Appeal in Case No. 4100)

#### (a) Failure to Follow Statutory Procedure in Revoking Probation

In *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997), we set aside the entire order purporting to place the juvenile with OJS at the YRTC because we found that at a previous dispositional hearing, the court had revoked the juvenile's probation without advising him of his right to counsel. In the instant case, we find a similar violation in the consecutive disposition orders.

The transcript reveals that the juvenile's adjudication hearing was held on January 29, 1997. The resulting order, filed January 31, and probation order reveal that the juvenile was adjudicated under § 43-247(1) and placed on indefinite probation, beginning January 29. Subsequently, on April 9, as reflected in an order filed April 17, the court, in the absence of any motion, other pleading, or notice that the State claimed the juvenile had violated the terms of his probation, committed the juvenile to OJS for placement at the YRTC-Kearney. The juvenile court apparently assumed that by putting a provision in the original dispositional order (filed January 31) continuing the matter, it

could change the order without pleadings, notice, or evidence. Such was clearly plain error.

■ Neb. Rev. Stat. § 43-286 (Cum. Supp. 1996) provides the dispositions available to a juvenile court for a juvenile described in § 43-247(1). They are as follows: (1) Place the juvenile on probation, subject to the supervision of a probation officer; (2) permit the juvenile to remain in his or her own home, subject to the supervision of the probation officer; (3) cause the juvenile to be placed in a suitable family home or institution, subject to the supervision of the probation officer; or (4) except as provided in Neb. Rev. Stat. § 43-287 (Cum. Supp. 1996), commit such juvenile to OJS. § 43-286(1) and (2). We note that these options are provided for in the alternative. Although the statute does provide for participation of the probation officer in more than one of the available alternatives and although the court may continue the dispositional portion of the hearing from time to time upon such terms and conditions as the court may prescribe, see § 43-286(1), the statute controlling disposition in juvenile cases does not provide for a combination of the imposition of probation and the continuance of the dispositional hearing. Judging by the orders the court below entered, it appears the juvenile court judge was of the opinion that all of the available dispositions were possible when disposition was continued and further that the disposition could be changed at any time. We think the juvenile court judge was wrong. We therefore hold that § 43-286 does not allow the juvenile court to place a juvenile on probation or exercise any of its other options under subsections (1) and (2), and at the same time continue the dispositional hearing.

■ Section 43-286(4) does, however, give a juvenile court the power to change the juvenile's disposition:

> When a juvenile is placed on probation or under the supervision of the court for conduct under subdivision (1), (2), (3)(b), or (4) of section 43-247 and it is alleged that the juvenile has violated a term of probation or supervision or that the juvenile has violated an order of the court, a motion to revoke probation or supervision or to change the disposition may be filed and proceedings held as follows:

(a) The motion shall set forth specific factual allegations of the alleged violations and a copy of such motion shall be served on all persons required to be served by sections 43-262 to 43-267;

(b) The juvenile shall be entitled to a hearing before the court to determine the validity of the allegations set forth

. . . .

(c) The hearing shall be conducted in an informal manner . . . .

(d) The juvenile shall be given a preliminary hearing in all cases when the juvenile is confined, detained, or otherwise significantly deprived of his or her liberty as a result of his or her alleged violation of probation. . . .

(e) If the juvenile is found by the court to have violated the terms of his or her probation, the court may modify the terms and conditions of the probation order, extend the period of probation, or enter any order of disposition that could have been made at the time the original order of probation was entered or, in the case of the juvenile adjudicated to be within the definitions of subdivision (3)(b) of section 43-247, the court, after considering the dispositions available, may in addition commit such juvenile to the Office of Juvenile Services . . . and

(f) In cases when the court revokes probation, it shall enter a written statement as to the evidence relied on and the reasons for revocation.

Subsection (4) of § 43-286 outlines the procedures which must be followed when a court revokes probation, revokes supervision, or otherwise changes the juvenile's disposition. See *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994). Subsection (4)(f) describes more particularly the procedures which must be followed when a court revokes probation. See *id.*

■ Under § 43-286, a juvenile court may not change a disposition unless the juvenile has violated a term of probation or supervision or the juvenile has violated an order of the court and the procedures established in subsection (4) have been satisfied. In other words, the original dispositional order cannot be changed at the whim of the juvenile court judge, but only as provided in subsection (4). We therefore conclude that in case

No. 4100, the order of April 17, 1997, committing the juvenile to OJS constitutes plain error, as it had the effect of revoking the juvenile's probation without following the applicable statutory procedure. Were it not for even more controlling plain error, we would reverse that order for such reason.

### (b) Right to Counsel

We further observe that at the April 9, 1997, hearing, which had the effect of revoking the juvenile's probation, the juvenile was not provided an attorney, nor was he properly advised of his rights to one. See, § 43-286(4)(b); Neb. Rev. Stat. § 43-272(1) (Reissue 1993); *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997). Again, were it not for even more controlling plain error, we would reverse that order for the above-specified reason.

### (c) Lack of Jurisdiction

In the petition in case No. 4100, the charges alleged against the juvenile contained merely the words of the statute and not any facts which would allow the juvenile, or anyone else for that matter, to differentiate one charge from another. Attached to the petition was a document entitled "Some Important Rights." One of those rights was listed as follows: "You have the right to be represented by a lawyer, if you are unable to afford a lawyer, the Court will determine your eligibility for court-appointed counsel at no expense to you."

In passing, we point out that this advisement is wrong. The correct rule, as set forth by the U.S. Supreme Court, is that

> the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.

*In re Gault*, 387 U.S. 1, 41, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967).

In compliance with that dictate, § 43-272 provides in part:

When any juvenile shall be brought without counsel before a juvenile court, the court shall advise such juvenile and his or her parent or guardian of their right to retain counsel and shall inquire of such juvenile and his or her parent or guardian as to whether they desire to retain counsel.

Moreover, Neb. Rev. Stat. § 43-279(1) (Reissue 1993) lists the rights of which the court must inform the parties when a petition alleges a juvenile to be within the provisions of § 43-247(1), (2), (3)(b), or (4) and the juvenile or his or her parent, guardian, or custodian appears with or without counsel. The court shall inform the parties:

(a) Of the nature of the proceedings and the possible consequences or dispositions . . . that may apply to the juvenile's case following an adjudication of jurisdiction;

(b) Of such juvenile's right to counsel . . . .

(c) Of the privilege against self-incrimination . . . .

(d) Of the right to confront anyone who testifies against the juvenile and to cross-examine any persons who appear against the juvenile;

(e) Of the right of the juvenile to testify and to compel other witnesses to attend and testify in his or her own behalf;

(f) Of the right of the juvenile to a speedy adjudication hearing; and

(g) Of the right to appeal and have a transcript for such purpose.

After giving such warnings and admonitions, the court may accept an in-court admission by the juvenile of all or any part of the allegations in the petition if the court has determined from examination of the juvenile and those present that such admission is intelligently, voluntarily, and understandingly made and with an affirmative waiver of rights and that a factual basis for such admission exists.

§ 43-279(1).

■ In the instant case, the record demonstrates that the juvenile court did not follow the clear dictates of § 43-279(1). It is axiomatic that a juvenile may not waive his or her right to be advised of his or her rights. Although the bills of exceptions

do not include any hearings until April 9, 1997, the adjudication order of January 29, 1997, which was filed on January 31, reveals that the juvenile was present with his father and that the following occurred:

Upon waiver of the reading of the petition and rights in open Court, the Court inquired as to understanding by all parties as to the content of the petition, rights and possible consequences if the allegations are admitted. The juvenile waived his right to counsel. The juvenile admitted the allegations.

The court then proceeded to make conclusions, but not findings of fact, about the juvenile's conduct which supported the adjudication. The order does not refer to a factual basis having been given or obtained and does not contain a finding that the juvenile's admission was intelligently, voluntarily, and understandingly made, both of which are prerequisites to the acceptance of an in-court admission. See, § 43-279(1); *In re Interest of A.M.H.*, 233 Neb. 610, 477 N.W.2d 40 (1989).

██ Neb. Rev. Stat. § 43-279.01(1) and (2) (Reissue 1993) generally requires the same advisement of rights and procedure. We explained the application of such law in *In re Interest of Amanda H.*, 4 Neb. App. 293, 305-06, 542 N.W.2d 79, 88 (1996), where we stated:

With regard to the failure of a trial court to find a factual basis, the [Nebraska] Supreme Court has held that the failure of a juvenile court to recite a factual basis in an adjudication hearing constitutes plain error that results in damage to the integrity, reputation, and fairness of the judicial process. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992). In *In re Interest of D.M.B.*, the Supreme Court went on to conclude that the failure of the juvenile court to recite a factual basis for the adjudication at an adjudication hearing caused the juvenile court to lack jurisdiction to later terminate parental rights. We think that in the case at hand it was plain error for the trial court to claim jurisdiction of [the juvenile] because it failed to recite the factual basis for jurisdiction and that therefore the father's motion for termination of jurisdiction should have been granted.

█ Similarly, in *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992), the juvenile court adjudicated the child as a juvenile under § 43-247(3)(a) despite the fact that there were no factual allegations, no evidence at the adjudication hearing, and no findings concerning the actions of either parent as to the child. In holding that the juvenile court had no jurisdiction over the juvenile, the court quoted *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992), for the following proposition:

"If the pleadings and evidence at the adjudication hearing do not justify a juvenile court acquiring jurisdiction of a child, then the juvenile court has no jurisdiction, i.e., no power, to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proven by new facts at a new adjudication-disposition hearing."

*In re Interest of N.M. and J.M.*, 240 Neb. at 694, 484 N.W.2d at 80. We note that the court decided this issue despite the fact that jurisdiction had not been raised by the parents.

Pursuant to the foregoing authorities, we conclude that it was plain error for the juvenile court to exercise jurisdiction over the juvenile by the adjudication order that was entered in case No. 4100. The petition was insufficient, there was no evidence adduced, and the juvenile admitted only to conclusions of law. Moreover, the juvenile court failed to recite the factual basis for its exercise of jurisdiction. Therefore, we must reverse the order of the juvenile court and remand the cause with directions to dismiss case No. 4100. See *In re Interest of Amanda H., supra.*

### 2. CASES NOS. A-97-523 AND A-97-682
### (APPEALS IN CASE NO. 4126)

In case No. A-97-523, the order of April 17, 1997, which purports to control OJS in case No. 4126, is contrary to our holdings in *In re Interest of David C., ante* p. 198, 572 N.W.2d 392 (1997), and must therefore be reversed. However, since that order committed the juvenile to the YRTC only in case No. 4100, the court may still exercise jurisdiction in entertaining dispositional proceedings in case No. 4126. Case No. A-97-682

is meritless and is also rendered moot by our opinion. Therefore it must be dismissed.

## VI. CONCLUSION

In case No. A-97-524, which comprises the appeal in case No. 4100 from the April 17, 1997, order, we direct the juvenile court to dismiss the proceedings without prejudice to any new proceedings if the facts at the time of the filing of new proceedings justify such proceedings. In case No. A-97-523, which comprises the appeal in case No. 4126 from the April 17, 1997, order, we reverse. And in case No. A-97-682, which is a subsequent appeal in case No. 4126, we dismiss the cause as moot.

JUDGMENT IN NO. A-97-523 REVERSED.
JUDGMENT IN NO. A-97-524 REVERSED, AND CAUSE REMANDED WITH DIRECTIONS TO DISMISS.
APPEAL IN NO. A-97-682 DISMISSED.