[Cite as *In re E.C.*, 2011-Ohio-6543.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

IN THE MATTER OF: )
)
E.C. )
)
) CASE NO. 09-NO-366
)
) OPINION
)
)

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas, Juvenile Division of Noble County, Ohio
Case No. 209-2022

JUDGMENT: Reversed and Remanded

APPEARANCES:
For Appellee
Attorney Jamie A. Riley
Assistant Prosecuting Attorney
508 North Street
Caldwell, Ohio 43724

For Appellant
Bonnie Mae Cooper, Pro-se
48289 Outpost Road
Caldwell, Ohio 43724

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 15, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, E.C., appeals a decision from the Noble County Common Pleas Court, Juvenile Division, adjudicating her a delinquent child for committing criminal trespass.

{¶2} On April 28, 2009, John Sklenar discovered a building on property he owned was broken into. Several items were missing, which he presumed were stolen; multiple other items were damaged. Sklenar testified, "[E]verything * * * was dumped in the middle of the floor and it was a mess." (08/28/2009 Tr. 11). These items included stored boxes from his brother's death, family heirlooms, antiques, and other personal valuables. (08/28/2009 Tr. 11-12.)

{¶3} Sklenar contacted Detective Stephen Hannum of the Noble County Sheriff's Department about the break-in on May 4, 2009. Detective Hannum arrived at the scene and commenced an investigation. Upon entering the building, he described it as being in "total disarray." Detective Hannum took photographs of the damage.

{¶4} Sklenar's niece informed him that her daughter talked to appellant and told her the events that transpired. Among the information, appellant told her some other names, which the niece relayed to Sklenar. Sklenar then gave these names to Detective Hannum.

{¶5} Detective Hannum contacted appellant's mother and asked if the three of them could have a conversation. She agreed and the three of them met at the school where she works. Specifically, appellant's mother said, "come straight on over to school and you can talk with us right now." (08/28/2009, Tr. 3.)

{¶6} Before Detective Hannum asked any questions, he explained to appellant and her mother that "any time a crime is committed by generally more than one person generally somebody will give that information up and when they do that person will be treated as a State's witness" and, in this particular case, Detective Hannum was interested in finding out what went on and who did what. (08/28/2009, Tr. 4.) Accordingly, he did not read appellant her Miranda rights. (08/28/2009 Tr. 4.)

**{¶7}** During the conversation, appellant gave the Detective "quite a bit of information." (08/28/2009 Tr. 4.) Appellant told him what her involvement was and she gave him the name of the other children who were involved in vandalizing the Sklenar property. This information led to the arrest of several other children.

**{¶8}** Detective Hannum then prepared a complaint against appellant alleging her to have committed criminal trespass on Sklenar's property, which Sklenar signed. The complaint was against appellant, alleging her to have committed criminal trespass on his property.

**{¶9}** On July 15, 2009, the trial court called the case for an initial appearance, at which time appellant appeared with her mother. Early on, appellant indicated that she wanted to be represented by counsel, but stated that her mother could not afford to hire an attorney. When the trial court determined that appellant did not qualify for the indigent appointment of counsel based on the eligibility charts it had before it, appellant then replied, "We'll just proceed without a lawyer." (07/15/2009 Tr. 4.)

**{¶10}** On August 28, 2009, the trial court held an adjudicatory hearing. After noting that appellant's mother was not indigent but could not afford to hire counsel, the trial court proceeded to let appellant's mother act as counsel for appellant. The state presented the testimony of Det. Hannum and John Sklenar, and appellant's mother cross-examined each of them. After the state presented its case, appellant's mother moved to have the case dismissed arguing that appellant could not have been on Sklenar's property on the date alleged in the complaint. The court overruled the motion and appellant's mother proceeded to present the testimony of appellant's "step parent" and appellant herself. The court, after it heard testimony and reviewed the evidence, found appellant to be a delinquent child beyond a reasonable doubt. Specifically, the court found that appellant committed criminal trespass in violation of R.C. 2911.21(A)(1), a fourth-degree misdemeanor (had it been committed by an

adult). Before proceeding to disposition, the court ordered appellant to undergo an initial screening at Noble Behavioral Health Choices.

**{¶11}** On October 27, 2009, the case was called for disposition. The court stayed a detention commitment of thirty days and imposed community control sanctions including: fifty hours of community service and teen group counseling at Noble Behavioral Health Choices. Court costs were to be paid by appellant within sixty days.

**{¶12}** Appellant's mother filed a timely notice of appeal and filed an appellate brief on appellant's behalf.

**{¶13}** An initial matter which demands our attention is appellant's mother acting as an attorney for appellant. "[J]udges have the ethical duty to prevent the unauthorized practice of law." *In re D.L.*, 189 Ohio App. 3d 154, 2010-Ohio-1888, 937 N.E.2d 1042, ¶15, citing Prof.Cond.R. 5.5(a), formerly DR 3–101(A). Gov.Bar.R. VII(2)(A) defines the unauthorized practice of law as "[t]he rendering of legal services for another [person] by any person not admitted to practice in Ohio."

**{¶14}** "A person's inherent right to proceed pro se in any court pertains only to that person and does not extend to the person's spouse, child, or solely owned corporation." *In re D.L.*, 189 Ohio App. 3d 154, 2010-Ohio-1888, 937 N.E.2d 1042, ¶14. Thus, a court errs when it permits a parent to act as their child's attorney. Id. at ¶16.

**{¶15}** In this instance, we cannot consider the appellate brief filed by appellant's mother. To do so would sanction the unauthorized practice of law. Moreover, appellant's mother acting as her attorney in the proceedings below has implications which affected the propriety of those proceedings.

**{¶16}** A review of how appellant's mother came to act as her counsel in the proceedings below reveals plain error. "[N]umerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775

N.E.2d 829, ¶26. Of importance here is a juvenile's right to counsel. The right to counsel in a juvenile case flows to the juvenile through the Due Process Clause of the Fourteenth Amendment, not the Sixth Amendment. *In re Gault* (1967), 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527.

**{¶17}** In Ohio, a juvenile's right to be represented by counsel in juvenile court can be found in Juv.R. 4(A) and 29(B), as well as R.C. 2151.352. In addition to the right to be represented by counsel at all stages of juvenile court proceedings, a juvenile who is indigent is entitled to appointed counsel. Juv.R. 4(A); R.C. 2151.352.

**{¶18}** Although a juvenile has the right to counsel and an indigent juvenile the right to appointed counsel, like an adult in a criminal case, that juvenile may waive his or her right to counsel, subject to certain standards. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, paragraph two of the syllabus.

**{¶19}** A juvenile's waiver of their right to counsel is effective only if they made that decision knowingly, voluntarily, and intelligently. Id. at ¶106, citing *State v. Gibson* (1976), 45 Ohio St.2d 366. The court "must scrupulously ensure that the juvenile fully understands, and intentionally and intelligently relinquishes, the right to counsel." Id. In so doing, the court "is to engage in a meaningful dialogue with the juvenile." Id. at ¶107.

**{¶20}** In evaluating whether a juvenile's waiver is valid, the court must apply a totality-of-the-circumstances analysis. Id. at ¶108. In applying this analysis, the court must consider: "the age, intelligence, and education of the juvenile; the juvenile's background and experience generally and in the court system specifically; the presence or absence of the juvenile's parent, guardian, or custodian; the language used by the court in describing the juvenile's rights; the juvenile's conduct; the juvenile's emotional stability; and the complexity of the proceedings." Id., citing *In re Dalton S.* (2007), 273 Neb. 504, 515.

**{¶21}** In this case, during the dialogue that took place concerning appellant's right to counsel, appellant clearly stated her desire to be represented by counsel:

**{¶22}** "COURT:   A couple of things I need to explain before we go any further here [E.C.].   First of all in this proceeding you have the right to be represented by a lawyer.   Now I don't think you have a lawyer with you right now.   If you simply haven't had enough time to get a lawyer and wanted more time I'd grant you a continuance so that you could go out and hire a lawyer.   If you've been unable to obtain the services of a lawyer because you feel the family doesn't have sufficient funds to pay for a lawyer, if in fact that is the case then the court will appoint a lawyer for you.   That lawyer would then be paid for by the county.   Do you understand that you have the right to be represented by a lawyer either retained or appointed?

**{¶23}** "[E.C.]:   Yes.

**{¶24}** "COURT:   Do you want to be represented by a lawyer in this proceeding?

**{¶25}** "[E.C.]:   Yes.

**{¶26}** "COURT:   Okay, how long will it take you to hire a lawyer?

**{¶27}** "[E.C.]:   My mom can't afford it.

**{¶28}** "COURT:   Okay.   Then well, let me ask you this.   Do you have any source of income [E.C.]?

**{¶29}** "[E.C.]:   No.

**{¶30}** "COURT:   Do you have any money saved up anywhere?

**{¶31}** "[E.C.]:   For college.

**{¶32}** "COURT:   Okay, how much you got saved up?

**{¶33}** "[E.C.]:   I don't know.

**{¶34}** "COURT:   Well, I know you don't know exactly but you've got a pretty good idea.

**{¶35}** "[E.C.]:   A couple hundred dollars.

**{¶36}** "COURT:   Do you own any titled property, cars, trucks, or anything like that, motorcycles?

**{¶37}** "[E.C.]:   No.

{¶38} "COURT: What would you estimate your net worth to be? If you added up everything that you own, subtracted from that whatever you, whatever debts you had, what would be your net worth?

{¶39} "[E.C.]: I'm not sure.

{¶40} "COURT: A couple million? Do you have any idea?

{¶41} "[E.C.]: No. A thousand dollars probably.

{¶42} "COURT: [E.C.'s mother], are you employed?

{¶43} "[E.C.'s mother]: Yes sir.

{¶44} "COURT: Where are you employed?

{¶45} "[E.C.'s mother]: I work for * * *.

{¶46} "COURT: Is that hourly employment or salary?

{¶47} "[E.C.'s mother]: Salary.

{¶48} "COURT: What's your salary?

{¶49} "[E.C.'s mother]: About 40 thousand.

{¶50} "COURT: Pardon?

{¶51} "[E.C.'s mother]: 40 thousand.

{¶52} "COURT: How many in the household? You, [E.C]?

{¶53} "[E.C.'s mother]: Brother * * * another Sister * * *.

{¶54} "COURT: 4 total?

{¶55} "[E.C.'s mother]: Um-huh.

{¶56} "COURT: Okay, according to my eligibility charts for indigent appointment of counsel that would put you in a bracket that is above what I'm allowed to appoint a lawyer at county expenses. Okay? So your daughter is not indigent. Okay? Now, sometimes lawyers want a retainer up front, and sometimes people don't have the money to do that. And under those circumstances then those people are not indigent but they're unable to obtain counsel. Under those circumstances the Court can find a lawyer for you. I will appoint that lawyer however, you'll have the obligation to pay for that lawyer. So we've got two, two choices here

with respect to proceeding with a lawyer. One of them is, I'll give you additional time to go out and hire a lawyer. The other one is I will find a lawyer, appoint that lawyer with the understanding that the obligation to pay for it will be yours. Okay? Those are the two ways that we can end up with a lawyer.

**{¶57}** "[E.C.]:          We'll just proceed without a lawyer.

**{¶58}** "COURT:          Okay, is that what you want to do?

**{¶59}** "[E.C.]:          Yes." (07/15/2009 Tr. 1-4).

**{¶60}** Although it is apparent that the trial court considered or viewed this dialogue to constitute an effective waiver of counsel, a closer examination of it reveals that it was not in fact an effective waiver of appellant's right to counsel because appellant did not make that decision knowingly, voluntarily, and intelligently. Two reasons form the basis of our conclusion.

**{¶61}** First, the Ohio Supreme Court has emphasized the important role a juvenile's parent plays in the context of a juvenile's waiver of their right to counsel: "In a delinquency proceeding, a juvenile may waive his constitutional right to counsel, subject to certain standards, if he is counseled and advised by his parent, custodian, or guardian. If the juvenile is not counseled by his parent, guardian, or custodian and has not consulted with an attorney, he may not waive his right to counsel." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, paragraph two of the syllabus.

**{¶62}** The Second District, in *J.F.*, 178 Ohio App.3d 702, reversed a juvenile's delinquency adjudication and resulting commitment, in part because it found that J.F. did not validly waive his right to counsel. J.F. argued on appeal that the trial court violated his right to counsel because it failed to obtain a valid waiver of counsel. The appellate court agreed stating:

**{¶63}** "In the present case, J.F.'s mother was present at the hearing, but she simply requested continued treatment and asked that J.F. not be detained long before being transported to DYS. There is no indication that J.F.'s mother counseled

him about waiving his right to counsel. In fact, unlike the parent in the case of *In re E.H.*[, 2d Dist. No. 22259, 2007-Ohio-6263]*,* J.F.'s mother was not even asked whether she believed that J.F. understood his constitutional rights." Id. at ¶93.

**{¶64}** The court went on to conclude that the error was not harmless, as the state had alleged. It pointed out that J.F. was not advised of, nor did he consider possible defenses to the alleged violations or circumstances that might mitigate his potential punishment as was required for him to make a valid waiver of counsel. Id. at ¶94.

**{¶65}** As was the case in *J.F.*, there is no indication here that appellant's mother counseled her about waiving her right to counsel. Nor was appellant's mother asked whether she believed appellant understood her constitutional rights. And appellant was never advised of possible defenses to the alleged violations or circumstances that might mitigate her potential punishment. There is also no indication that appellant consulted with an attorney or a guardian ad litem about waiving her right to counsel. Thus, like in *J.F.*, appellant did not enter a valid waiver of her right to counsel.

**{¶66}** The second reason for our conclusion lies with the trial court's determination of appellant's indigency. The Ohio Administrative Code sets forth the standards for deciding whether a person is indigent. Ohio Adm.Code 120-1-03(D), in effect at the time the trial court made its determination concerning appellant's indigency, indicated that a child's indigence should be determined independently from the affluence of the parent:

**{¶67}** "In determining eligibility of a child for court-appointed counsel in juvenile court, only the child's income shall initially be considered. The court is encouraged to order parents who are not indigent to pay for the necessary costs of representation for the child in delinquency, unruly, and traffic cases. In no case shall a child be denied appointed counsel because a parent refuses to disclose their

financial information or to participate in a reimbursement, recoupment, contribution, or partial payment program."

**{¶68}** As the Second District observed, "it makes no sense to presume, even rebuttably, that a minor can afford counsel. The far more rational presumption is that a minor cannot afford counsel. Of course, the minor's parents may be able to afford counsel." *In re R.B.*, 166 Ohio App. 3d 626, 2006-Ohio-264, 852 N.E.2d 1219, ¶26.

**{¶69}** This rational thinking has made its way into the current Ohio Administrative Code which now provides that presumption:

**{¶70}** "(5) Juveniles are presumed indigent. In determining the eligibility of a child for court-appointed counsel in juvenile court, only the juvenile's income shall be considered when determining if counsel should be appointed.

**{¶71}** "(a) A juvenile applicant's parent should complete the recoupment component of the affidavit, as the juvenile's parents may be subject to recoupment, contribution, or partial payment program as set forth in section 120.03 of the Revised Code and rule 120-1-05 of the Administrative Code. However, a parent's refusal to complete the recoupment component of the affidavit of indigency shall in no way impede the appointment of counsel for the juvenile." Ohio Adm.Code 120-1-03(C).

**{¶72}** Based on our reading of the Ohio Administrative Code and the Second District's reasoning in *R.B.*, we find that the trial court's dialogue with appellant concerning her indigency was not meaningful enough so as to have allowed her to have made her waiver decision knowingly, voluntarily, and intelligently. In this case, the discussion and consideration of appellant's indigency was critically important, especially considering her expressed desire to be represented by counsel.

**{¶73}** In sum, based on the facts and circumstances of this case, we conclude that appellant's waiver of her right to counsel was ineffective because appellant was ill-equipped to make that decision knowingly, voluntarily, and intelligently. Appellant was not adequately counseled and advised by her mother concerning her right to counsel and the trial court's discussion and consideration of appellant's right to

counsel and her indigency was a dialogue that was not quite meaningful enough for appellant to have fully understood, and intentionally and intelligently relinquished her right to counsel.

**{¶74}** Accordingly, appellant's delinquency adjudication and disposition is hereby reversed and this matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion.

Vukovich, J., concurs.

DeGenaro, J., concurs.