STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-937

STATE OF LOUISIANA

VERSUS

MACK HENRY JOHNSON, JR.

************

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 60371
HONORABLE CHARLES BLAYLOCK ADAMS,
DISTRICT COURT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.

REVERSED AND REMANDED.

Annette Roach
Louisiana Appellate Project
Post Office Box 1747
Lake Charles, Louisiana 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:
    Mack Henry Johnson, Jr.

Don M. Burkett - District Attorney
ADA Clifford R. Strider, III
Post Office Box 1557
Many, Louisiana 71449-1557
(318) 256-6246
COUNSEL FOR PLAINTIFF/APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

Defendant, Mack Henry Johnson, Jr., was charged by bill of information with one count of simple escape, a violation of La.R.S. 14:110. Trial by jury commenced on January 30, 2006. On the same day, a jury found Defendant guilty as charged. On February 2, 2006, the State filed a multiple offender bill against Defendant. On April 27, 2006, Defendant was adjudicated a third-time felony offender and sentenced to five years at hard labor, to be served consecutively to any other sentence Defendant was currently serving. A motion to reconsider the sentence was filed on May 4, 2006, which was subsequently denied on May 15, 2006 without written reasons.

Defendant is now before this court on appeal. He assigns four errors: 1) the trial court allowed Defendant to proceed to trial without counsel, despite the fact that counsel was appointed and the record does not reflect that counsel withdrew from the case; 2) the trial court failed to inquire as to whether Defendant knowingly and intelligently waived his right to counsel; 3) Defendant was denied his right to counsel when defense counsel, who had been appointed after trial, asserted that he was unprepared to proceed, but the trial court proceeded with the habitual offender hearing regardless; and 4) the trial court erred when it used two felony convictions which arose out of the same occurrence, and pled on the same date, as two separate predicates for the purpose of the habitual offender adjudication, or in the alternative, defense counsel "rendered ineffective assistance and Mack Henry Johnson, Jr. was prejudiced by counsel's actions (or inactions) when he was adjudicated a third felony offender."

For the following reasons, we find merit in Defendant's first two assignment of errors. Accordingly, we reverse Defendant's conviction for simple escape; we reverse Defendant's habitual offender adjudication; we vacate Defendant's sentence;

1

and we remand for further proceedings consistent herewith.

**FACTS:**

On or about April 21, 2005, Defendant was picked up for a parole violation and taken to the Sabine Parish Detention Center for processing. While waiting to be booked, Defendant, without permission, walked out of the detention center and fled.

 **ASSIGNMENTS OF ERROR NUMBER 1 AND 2:**

We will address assignments of error number one and two together because the facts and issue of the first assignment are pertinent to the issue of the second assignment. The questions presented by these two assignments of error are whether Defendant was effectively denied the right to counsel and, under the circumstances, whether he knowingly and intelligently waived his right to counsel.

An accused whose offense subjects him to the possibility of imprisonment is guaranteed the right to counsel. U.S. Const. Amend. VI; La.Const. art. I, § 13. *State v. Hayes*, 95-1170 (La.App. 3 Cir. 3/6/96), 670 So.2d 683. Further, in *State v. Whatley*, 03-655, pp. 22-23 (La.App. 3 Cir. 11/5/03), 858 So.2d 751, 765-66, this court cited *Hayes* as follows:

> Before a defendant may waive his right to counsel, the trial court must determine whether the defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. *State v. Hegwood*, 345 So.2d 1179 (La.1977). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *State v. Harper*, 381 So.2d 468 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether a defendant has validly waived his right to counsel. *State v. Carpenter*, 390 So.2d 1296 (La.1980). However, the record must establish that the accused knew what he was doing and that his choice was made "with eyes open." *Id.* at 1298, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

> The Third Circuit Court of Appeal has repeatedly required the

2

trial court meet the following requirements in determining whether a defendant has validly waived his right to counsel: first, determine a defendant's literacy, competency, understanding and volition, i.e. was defendant's waiver of counsel made voluntarily and intelligently; and second, warn the defendant of the dangers and disadvantages of self-representation, so that the record establishes that the defendant knew what he was doing. [*State v.*] *Mitchell,* 580 So.2d 1006 [(La.App. 3 Cir. 1991) *writ denied*, 613 So.2d 969 (La.1993)]; [*State v.*] *Smith*, 479 So.2d 1062 [La.App. 3 Cir. 1985)]; *State v. Adams,* 526 So.2d 867 (La.App. 3 Cir.1988); *State v. Sepulvado*, 549 So.2d 928 (La.App. 3 Cir.1989); and *State v. Bourgeois*, 541 So.2d 926 (La.App. 3 Cir.1989), *writ denied*, 572 So.2d 85 (La.1991).

In the current case, Defendant was initially assigned counsel. According to the minute entry dated April 26, 2005, he was brought before the court on a "72 hour" hearing where he was advised of the charge against him and of his right to counsel. At this time, Defendant requested the appointment of counsel. The trial court appointed Attorney Joseph D. Toups to represent him. There was no transcript available of this hearing. The order for indigent representation was signed and filed into the record on April 26, 2005.

According to the minutes, Defendant was scheduled to be arraigned on July 28, 2005; however, neither he nor counsel were present, and the matter was refixed for September 29, 2005. On September 29, 2005, Defendant was present, but without counsel. The Court advised him of the charge against him, his right to counsel, and his right to formal arraignment. Defendant advised the trial court that he could afford counsel and wished to have counsel present for arraignment. The matter was refixed for October 27, 2005. There is no transcription of the September 29th hearing.

Defendant was arraigned on the charge of simple escape on October 27, 2005. At arraignment, the trial court asked Defendant if he was represented by counsel. The following conversation took place.

> THE DEFENDANT-JOHNSON: No sir, but I just got a job like about this last week right here. I'm trying to save my money and get one.

3

THE COURT:  How much do you earn at your job?

THE DEFENDANT-JOHNSON:  Uh like $5.75 an hour.

THE COURT: Okay. Mr. Johnson, you would qualify for a court-appointed attorney but you also have the opportunity to hire the attorney of your choice at any time during the proceedings up until it gets too late. Do you wish to have a court-appointed attorney at this time or not?

THE DEFENDANT-JOHNSON:  No, sir.

THE COURT:  You don't wish to have a court appointed attorney?

THE DEFENDANT-JOHNSON:  No, sir.

THE COURT:  Okay.  Any pending cases on Mr. Mack Henry Johnson not tried?

MR. BRANDON:  (No response)

COURT:  Simple is with or without, do y'all know?

MR. TOUPS:  Yes sir.

THE COURT:  It is.  Category four allotment.

DEPUTY CLERK:  Division B.

THE COURT:  Division B.  Your pretrial date is January 9th and your trial date is January 30th.

THE DEFENDANT-JOHNSON:  Can you tell me the penalties on that?

. . . .

THE COURT:  All right, thank you. Hold on, that was A-2. That was work release. I told you wrong. A-3--A-1, shall be imprisoned with or without hard labor for not less than two years nor more than five years.  And it is a consecutive sentence.  So it's at least two years and no more than five years.

THE DEFENDANT-JOHNSON:  All right.  There ain't no fine on that huh?

THE COURT:  Nope.

Nothing further occurred in the record until the January 9, 2006 pre-trial

hearing.  At that time, the State noted there still was not an enrollment of counsel for Defendant.  Defendant explained that he had been incarcerated in November and in a rehabilitation facility in October.  He stated he wanted to represent himself.

THE COURT:  It's a bad idea.

THE DEFENDANT-JOHNSON:  Naw.

THE COURT:  Do you understand what the charge of simple escape is?

THE DEFENDANT-JOHNSON:  Yes, sir.

THE COURT:  Do you understand what the penalty provisions for it are?

THE DEFENDANT-JOHNSON:  Yes, sir.

THE COURT:  What are they?

THE DEFENDANT-JOHNSON:  Uh start off at two years.

THE COURT:  And do you understand that it runs--any sentence on an escape charge run, by law, consecutively with anything else you're serving?

THE DEFENDANT-JOHNSON:  Yes, sir.

THE COURT:  Okay.  You're not--obviously you're here and you're not asking for a court-appointed attorney, is that correct?

THE DEFENDANT-JOHNSON:  No, sir.

THE COURT:  Mr. Strider, anything you want me to add to that?

MR. STRIDER:  What is his education level?

THE COURT:  Mr. Johnson, what kind of education have you received?

THE DEFENDANT-JOHNSON:  High school diploma.

THE COURT:  You graduated?

THE DEFENDANT-JOHNSON:  Uh yes, sir.

THE COURT:  What year did you graduate in?

THE DEFENDANT-JOHNSON:  Uh 2002, yeah, it was 2002.

THE COURT:  Okay.  What kind of work have you done?

THE DEFENDANT-JOHNSON:  Uh nothing really.  Just here and there odd and end jobs.  I used to work at Burger King but I got a probation violation and got fired.

THE COURT:  All right. You're ready for trial January 30th?  That's your trial date.

. . . .

MR. STRIDER:  Your Honor, just for the record, the Defendant has two prior convictions.  To test the Court's knowledge of whether he is capable of representing himself, perhaps you could inquire if he knows what that means and the possible results of being convicted.

THE DEFENDANT-JOHNSON:  Yelp [sic], that means that if I do get convicted they probably gonna violate my probation which I have to back up my probation and that's gonna run wild with the time on my escape what they gonna be wild, so I'll do one and then the other after that.

THE COURT:  How about an habitual offender bill?

THE DEFENDANT-JOHNSON:  I done been convicted on one.  They ran both of them on the same docket.  I got one year on both of them at the same time.

THE COURT:  It's still possible to be a second felony offender.

THE DEFENDANT-JOHNSON:  I'm ready to deal with that then.

THE COURT:  You've heard the saying of a man who represents himself as an attorney has a fool for a client, you've heard that?

THE DEFENDANT-JOHNSON:  Yeah, I've heard that before.

THE COURT:  Okay.

Defendant then proceeded to trial on January 30, 2006.  There was no further discussion at trial regarding Defendant's literacy, competency, understanding and volition.  Defendant argues that the trial court's brief interview with him "falls short of the requirements necessary to determine whether he validly waived his right to counsel."

Initially, at the "72 hour" hearing, Defendant requested and was assigned indigent defense counsel. As noted above, while there is apparently no transcript of the hearing, the written appointment was filed into the record. On the first arraignment date, Defendant informed the trial court he had not been able to obtain counsel, and the matter was reset at his request. However, on October 27, 2005, at the time scheduled for arraignment, Defendant stated that he had not been able to retain counsel because he had been in rehabilitation and incarcerated. During the hearing, the trial court informed Defendant that he would qualify for a court-appointed attorney. However, there was no indication in the record that Defendant was even aware that he had been appointed counsel, or if there were reasons he chose not to utilize appointed counsel's services. Without further ado, the trial court set pre-trial and trial dates, without even taking Defendant's guilty plea. Notably, during the hearing, prior court-appointed counsel, Joseph D. Toups, even answered one of the trial court's questions regarding the offense.

Whether or not Defendant was represented by counsel at arraignment is potentially problematic; however, a trial court may take an accused's guilty plea without counsel. La.Code Crim.P. art. 516. According to Louisiana jurisprudence, an arraignment is not necessarily a critical stage of the criminal process, and available defenses are not lost if not pled at arraignment. Article 516 permits a subsequently appointed or procured counsel to withdraw any motion, plea, or waiver made by the accused for a reasonable time before trial. *See State v. Tarver*, 02-973 (La.App. 3 Cir. 3/12/03), 846 So.2d 851, *writ denied*, 03-1157 (La. 11/14/03), 858 So.2d 416. Therefore, at this point, there was no error with the trial court assuming Defendant's guilty plea and setting the case for trial without defense counsel being present right at the time.

7

Defendant argues, however, that the "record of this case does not show that Mr. Toups appeared on the record in a representative capacity for Mack Henry Johnson, Jr., at any stage of these proceedings." Defendant further argues:

> In the instant case, trial counsel's total failure to meet with or otherwise make any contact with Mack Henry Johnson, Jr. at any moment in the pendency of these proceedings constitutes a denial of counsel during the pretrial phase of these criminal proceedings. Because the right to counsel "includes the concomitant right to communicate with counsel at every critical stage of the proceedings," the total failure to meet or represent Mack Henry Johnson, Jr. in anyway constitutes a denial of counsel. *Perry v. Leeke,* 488 U.S. 272, 298, 109 S.Ct. 594, 609, 102 L.Ed.2d 624 (1989)(Marshall, J., dissenting)(citing *Powell*, 287 U.S. at 68-69, 53 S.Ct. at 64).

Regardless of whether Defendant was or was not represented at this point, when Defendant informed the trial court at the pre-trial hearing he could not afford to retain counsel and would represent himself, the trial court should have obtained an adequate waiver of the right to counsel, which it failed to do.

In *Whatley*, 858 So.2d 751, this court found that there was insufficient inquiry into the accused's competency to represent himself. The accused was not represented by counsel at the arraignment or at trial. He had indicated to the trial court that he desired to retain counsel; however, at the time of trial, he indicated he would defend himself because he could not afford to retain counsel. The trial court then inquired into the accused's literacy by having him read a page of jury instructions in court. There was no further inquiry into his background or the complexity of the case. The trial court then went on to discuss whether the accused could afford to hire counsel and advised him he could have counsel appointed to represent him. The trial court discussed some trial procedure with the accused and advised him that he had not been trained in the law, and that the prosecutor was an experienced attorney. After noting that throughout the colloquy, the accused said several times that he would like to have counsel, but could not afford one, this court stated:

8

Simply put, the overall colloquy suggests Defendant did not understand his rights. Further, although the court conducted a clear and practical inquiry into Defendant's literacy by having him read in open court, there was no further inquiry into his education or background, or the relative complexity of the case. As shown by the *Jackson* review in the previously-discussed assignments, the issue of co-ownership gave this case nuances that Defendant, a layman, may not have appreciated. As the lower court did not inquire into these factors or similar issues, it is clear the trial court did not make a sufficient inquiry into whether Defendant knowingly and intelligently waived his right to obtain trial counsel.

*Id.* at 767.

An example of an adequate inquiry into whether the accused intelligently and

knowingly waived his right to counsel can be found in *State v. Bruce*, 03-918, pp. 5-6

(La.App. 5 Cir. 12/30/03), 864 So.2d 854, 858, as follows:

[T]he record in the present case shows a detailed inquiry into the understanding of defendant in waiving his right to counsel. On June 17, 2002, defendant appeared in open court and unequivocally stated his desire to represent himself. Prior to reviewing the waiver of right to an attorney form, the trial court cautioned defendant against self-representation by explaining several times that defendant was facing a life sentence as a multiple offender if convicted on the underlying charge. The trial court also reviewed the current plea offer by the State which was five years as a multiple offender. The trial court expressed its opinion that self-representation places defendant at a tremendous disadvantage because the State will use an experienced prosecutor to attempt to convict defendant. While acknowledging defendant's right to self-representation, the trial court stringently discouraged it.

The trial court further advised defendant that it could give only limited help in making sure defendant took advantage of the procedural laws available to him and even discussed defendant's option under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The trial court reminded defendant that appointed counsel could remain on the case as an adviser to help defendant with procedural matters. The trial court expressed concern that defendant was making a decision out of anger or frustration and took a break in the proceedings to allow defendant an opportunity to think about his decision. Defendant assured the trial court he was not choosing self-representation out of anger or frustration.

After the break, defendant again stated he wanted to defend himself. The trial court then reviewed with the defendant in open court the waiver of right to an attorney form which defendant had executed. The form indicated defendant could read and write. It advised defendant

that an attorney is experienced and may know of certain defenses available or procedures which may result in defendant's case being dismissed or the charges being reduced that may not be known to defendant. Defendant was further advised that he would have to file his own motions, make his own objections, cross-examine witnesses at trial and prepare his own defense.

Defendant was also told of his right to have an attorney appointed to assist him.

In *Bruce*, 864 So.2d 854, the fifth circuit found that the trial court adequately complied with the requirements for ascertaining that the accused knowingly and intelligently waived his right to counsel. The fifth circuit also stated:

> In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges and of the dangers and disadvantages of self-representation such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. *State v. Strain*, 585 So.2d 540, 542-543 (La.1991). Additionally, the trial court should inquire into the defendant's age, education and mental condition and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. *[Id.]* In order to sufficiently establish on the record that defendant is making an intelligent and knowing waiver, the inquiry should involve more than an interchange of "yes" or "no" responses from the defendant. *Id.*
>
> There is no inflexible criteria or magic word formula for determining the validity of a defendant's waiver of the right counsel. Rather, the validity of the waiver must take into account the totality of the circumstances in each case. *State v. Stevison*, 97-3122 (La.10/30/98), 721 So.2d 843, 845.

*Id.* at 857.

In a recently decided case, *State v. Poche*, 05-1042 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225, this court analyzed the trial court's inquiry of the accused to determine if he waived his right to counsel. Poche, while assisted by counsel, took over his defense at the close of the State's case. The transcript of the dialogue between the trial court and Poche indicated that the trial court perfunctorily asked him if he understood what was going on, to which the accused answered in the affirmative. The trial court told Poche that he must follow the rules of criminal procedure and

evidence, and that if he was incapable of doing so, his counsel would take over the questioning of the witnesses. Based on the trial transcript alone, this court stated:

> The trial court's interview with Defendant did not comply with the requirements necessary to determine whether Defendant validly waived his right to counsel. The trial court did not make an express determination regarding Defendant's literacy, competency, or understanding. Although the trial court asked Defendant if he wished to act as his own counsel, it failed to determine whether his waiver was intelligently made. Also, the trial court failed to adequately warn Defendant of the dangers and disadvantages of self-representation: it did not inform him that self-representation might have an adverse effect on the outcome of the case, tell him the elements of the offenses, or explain the maximum penalties that he would fact if convicted.

*Id.* at 1233.

In the case *sub judice*, the trial court asked Defendant if he understood the charge, to which Defendant answered, "Yes." The trial court asked if he knew the penalty for the offense and Defendant answered, "start off at two years." The trial court then explained that any sentence imposed would run consecutively. Defendant responded, "Yes." The State then asked the only question concerning Defendant's literacy, which was whether Defendant had graduated from high school. Defendant said he did. When asked what employment he had since high school, Defendant answered, "Uh nothing really." He stated that he had worked at Burger King briefly until he was fired because of a probation violation. The State then insisted that the trial court question Defendant regarding the consequences of being convicted as charged and the court mentioned a habitual offender bill. While Defendant had really been told that if he was convicted he would be required to serve the sentence consecutively to the sentence imposed on his prior convictions, his answer to whether he understood a habitual offender charge was not necessarily responsive, and indicated that he only understood that he had prior convictions.

During the dialogue at the pre-trial hearing, the trial court did not reiterate that

Defendant had the right to counsel, nor did the trial court advise Defendant he could be assisted by counsel. At no time, in the record, did the trial court discuss the elements of the offense. Other than telling Defendant it was a bad idea and that an attorney who represented himself had a fool for a client, the trial court did not advise him of the dangerousness and disadvantages of self-representation. The trial court did not warn him about the experience of the State's prosecutor in prosecuting cases, or discuss filing motions such as discovery motions or motions to suppress, trial procedures, objections, or the consequence of putting himself on the stand to testify.[1]

Accordingly, based on the transcript of the pre-trial hearing, we find that the trial court did not adequately ascertain whether Defendant knowingly and intelligently waived his right to counsel.

However, this court in *Poche,* 924 So.2d 1225, held that the entire "record should be examined for indications that a defendant was aware of the dangers and disadvantages of self-representation." *Id.* at 1233 (citing *State v. Norman,* 99-600 (La.App. 5 Cir. 2/16/00), 756 So.2d 525, *writ denied*, 00-971 (La.3/23/01), 787 So.2d 1007). In *Poche,* the accused had filed several pre-trial *pro se* briefs, and on several occasions the trial court allowed him to argue the motions. Therefore, by the time of trial, this court found that "the trial court was well aware that he was literate, competent, and understood the charges against him." *Id.* This court stated, "we find that, at the time of the waiver, the trial court only needed to ascertain Defendant's volition, which it did, to satisfy the first step of the *Hayes* test." *Id.*

Moreover, as in *Bruce,* 864 So.2d 854, the trial court knew that Poche had

---

[1]In the presentation of his case, Defendant put a woman on the stand who testified that the police officers came to her house to locate Defendant after he fled the detention center. According to her testimony, Defendant had hid in her house. She testified that she told the officers where to find him. Defendant also took the stand on his own behalf. During cross examination, the State asked him about any prior convictions. When he objected, the trial court told him he had to answer the question because he was under cross-examination. Defendant then admitted to having two prior felonies.

prior convictions. This court noted that at sentencing the trial court discussed Poche's extensive criminal record. He was a five-time felony offender and had several misdemeanor convictions; thus, he had knowledge of the judicial process through his past experiences.

In the case *sub judice*, there were no motions filed prior to the pre-trial hearing, and nothing filed prior to trial. Moreover, the record shows that Defendant's two prior convictions were a possession of marijuana with intent to distribute and a simple kidnapping, both of which occurred on the same day and pled to on the same day. It is not clear from the record whether these offenses were pled before this judge.

Under the facts and circumstances of this case, the trial court failed to adequately ascertain whether Defendant knowingly and intelligently waived his right to counsel. The trial court's dialogue with Defendant did not sufficiently address his literacy, competency, understanding, or volition; nor did the trial court adequately advise Defendant of the dangers and disadvantages of self-representation. We find that Defendant's right to counsel was violated when the trial court permitted him to represent himself without adequate warning, particularly since Defendant had originally asked for counsel, had been appointed counsel, and on two occasions had advised the trial court he desired counsel, then finally admitted to the trial court he could not afford counsel.

**CONCLUSION**

For these reasons, we reverse Defendant's conviction of simple escape. As a consequence thereby, Defendant's habitual offender conviction as a second-time felony offender is reversed, his sentence is vacated, and the matter is remanded to the trial court for further proceedings.

Because we reverse Defendant's conviction of simple escape, thereby reversing

13

the habitual offender adjudication, the remaining two assignments of error are moot.

**REVERSED AND REMANDED.**