DO NOT PUBLISH

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1484

STATE IN THE INTEREST OF
J. F., J. F. AND A. F.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OPELOUSAS CITY COURT FOR THE
PARISH OF ST. LANDRY, NO. JV-7033
HONORABLE KENNETH BOAGNI, JR., CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

J. DAVID PAINTER

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

VACATED AND REMANDED.

J. J. F., Sr.
937 Jordan St.
Opelousas, LA 70570
        Defendant-Appellant, Pro Se

Chris Richard
730 Jefferson St.
Lafayette, LA 70501
Counsel for Defendant-Appellant:
        P. N.

Lauren Mouret
115 N. Court St.
Opelousas, LA 70570
Counsel for J. F., Jr., J. F. and A. F.

L. Antoinette Beard
825 Kaliste Saloom Road., Bldg. 1, Rm. 218
Lafayette, LA 70501
Counsel for Plaintiff-Appellee:
        Department of Social Services

**PAINTER, Judge.**

J. F., Sr. appeals the trial court's judgment granting guardianship of his three minor children to their paternal grandmother with a permanent plan that she remain guardian until each child reaches the age of eighteen.

FACTS

In May 2001, a petition was filed to declare J.F., Jr., then seven years old, a child in need of care. His father, J. F., Sr., was given custody and supervision was deemed unnecessary. In February 2004, the Office of Community Services (OCS) received a report that J.F., Jr. had been sexually molested by his uncle while at the home of his paternal grandmother and that, on another occasion, the mother, P. N., had left her three children, aged 10, 2-1/2 and 2 locked in her house for at least fifteen minutes while she went to a neighbor's house to seek medical attention for her asthma. At that time J.F., Sr. had apparently ceded custody of J. F., Jr. to P. N. because of inability to care for the child's needs. In May 2004, a petition was again filed to have J. F., Jr. declared a child in need of care. In August 2004, P. N. was given custody of J. F., Jr. because of J. F., Sr.'s admission that he could not care for the child. The judgment made no mention of supervision. For the next year, the family's progress reports indicated that the family was making significant progress and cooperating with the agency.

On February 22, 2005, the OCS received a call from P. N. indicating that she and one of the children needed emergency medical treatment for asthma. On February 24, 2005, an affidavit in support of an instanter order was filed with the Opelousas Juvenile City Court by the OCS. The instanter order was issued, and J. F., Jr., and his younger siblings, J. F., and A. F. were taken into the custody of the State

1

through the Department of Social Services and placed in foster care. A hearing on the order was held on February 28, 2005. No transcript was made of the hearing but, according to a minute entry, all parties were present with counsel, and the case was set for a forty-five day hearing. A petition was filed to have the children declared in need of care, and an order of continued custody was signed on February 28, 2005, continuing the children in the care of the State. A case plan was filed with the court on March 25, 2005. By the time the forty-five day hearing was held on April 6, 2005, counsel for J. F., Sr. was apparently no longer able to practice law, and J. F., Sr. was allowed to represent himself. Custody was again continued with the State. Five more review hearings were held at which representatives from the OCS and the parties testified. J. F., Sr. continued to represent himself. Counsel for the remaining parties were present but rarely, if ever, participated. OCS case workers reported that P. N. had an ongoing drug problem evidenced by positive drug screens and that J. F., Sr. was refusing to work to achieve the goals set in the case plan by failing to get counseling regarding the sexual abuse of his son, J. F., Jr., in failing to participate in parenting classes, in failing to participate in a domestic violence program, and in failing to submit to periodic drug testing. J. F., Sr. continued to object to the plan. During this period however, J. F., Sr. was working, found a place to live in which the children could be accommodated, and found daycare and school placements for the children. Additionally, his psychological report, dated April 2005, was generally positive and suggested that a trial placement of the children with him would be feasible. The final hearing, held on March 8, 2006, was designated a review hearing but was, in fact, a permanency hearing. *See* La.Ch.Code art. 702. It resulted in the children being placed in the care of their paternal grandmother. The judgment stated

2

that: "this guardianship shall remain in effect until the child's eighteenth (18th) birthday, as provided by Louisiana Children's Code or is otherwise modified by this Court, and that this is the Permanent Plan for the child."

J. F., Sr. appeals asserting that his due process rights have been violated. After reviewing the record, we agree.

## DISCUSSION

In *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982), the United States Supreme Court recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their child and that the natural parents' interest does not "evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." The Court went on to acknowledge that, while the State has an "urgent interest" in a child's welfare and in providing the child with a permanent home, as long as there is reason to believe that a positive, nurturing parent-child relationship exists, the State's interest must favor preservation over severance of natural familial bonds. *Id.* at 766, 102 S.Ct. at 1401 (quoting *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). Thus, the Court found that parents who are faced with the possibility of forced dissolution of their parental rights must be provided with fundamentally fair procedures in order to ensure that children's legal bonds are not erroneously severed from fit parents. *Id*. at 753-54, 102 S.Ct. at 1395.

*State ex rel. G.J.L.*, 00-3278, p. 5 (La.6/29/01), 791 So.2d 80, 84 (emphasis added).

The Louisiana Children's Code set forth the procedures required for removing children in need of care from the custody of their parents and the procedures that must be followed to reunify the children with their parents or terminate their parental rights. "Because due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship, actions to terminate must be scrutinized very carefully." *Id.* at 85.

*State in Interest of P.A.R.*, 06-423, pp 3-4 (La.App. 3 Cir. 10/18/06), 942 So.2d 57, 60.

3

Examination of the record in this case has revealed several instances in which failure to comply with the procedure set out in the Children's Code may have impacted the due process rights of the parties. However, because the trial court's failure to determine whether J. F., Sr.'s waiver of his right to appointed counsel was knowing and intelligent requires vacation of the March 8, 2006 review judgment, we need not consider other issues at this time.[1]

Louisiana Children's Code article 608 provides that:

> A. The parents of a child who is the subject of a child in need of care proceeding shall be entitled to counsel, which right may be waived by the parents.
>
> B. If the parents of a child are financially unable to afford counsel, the court shall appoint counsel, or refer the parents for representation by the indigent defender board.

While the right to counsel may be waived, the waiver must be knowing and intelligent. *In Int. of Howard*, 382 So.2d 194 (La.App. 2 Cir. 1980).

Although J.F., Sr. initially had counsel appointed for him, by the forty-five day hearing on April 6, 2006, his counsel was no longer practicing law. When this information was presented to the court, the following exchange took place:

---

[1]Our review of the record further revealed that it contains no indication that the OCS, in placing the children after P. N. fell ill in February 2006, followed the rules set out in La.Ch.Code art. 622. The testimony of Paula Hardy, the caseworker called by P. N., indicates that she simply accepted P. N.'s statements that no one was available to take the children rather than attempting to determine whether the father or another relative would be able to provide a suitable placement for the children. The record makes it clear that the OCS caseworkers were aware of the existence of both the father and paternal grandmother and had contact with them.

Additionally, because there is no transcript of the initial hearing after the children were removed from the home in February 2005, we are unable to determine whether the State carried its burden of proving a ground for continued custody at that time. La.Ch.Code art. 624. The only evidence available to this court is contained in the caseworker and psychological reports issued prior to the February removal. The information in those reports is essentially positive with regard to the family's progress. Therefore, it is impossible to tell what had changed in regard to this family at that time, other than P. N.'s temporary illness. It is not possible to determine the court's reasons for continuing the placement in foster care rather than with a family member.

Finally, we do not reach the question of whether the requirements for a permanency hearing as set out in La.Ch.Code art. 702, et seq. were complied with..

4

BY THE COURT: Chris Richard is representing the minor children -the three (3) kids.  Scott you're in for Lauren [attorney for P. N.] huh?

BY MR. MOURET:   Yes, sir.

BY THE COURT: So, you're going to be representing [J. F., Sr.] in this matter.

BY [J. F., Sr.]: I'mma represent myself

BY THE COURT: Huh?

BY [J. F., Sr.]: I wanna represent myself.

BY THE COURT: You can represent yourself if you wish.  Put that in the record that he doesn't want a lawyer.

BY [J. F., Sr.]: He can help out if he wants to enroll as counsel.

BY THE COURT: Its up to you.  He's not enrolling as anything.  If you want a lawyer, I'm the one that has to appoint the lawyer.  If you don't want a lawyer you can act on you own.  It doesn't matter.

BY [J. F., Sr.]: I will.  I'll represent myself.

While there is no "magic" formula or script to be read to one who chooses to waive the right to counsel, the determination whether the waiver is knowing and intelligent depends on a number of case-specific factors, including the defendant's education or sophistication and the complexity and nature of the proceeding.  *State v. Simmons*, 05-1462 (La. 3/17/06), 924 So.2d 137 (citing *Iowa v. Tovar*, 541 U.S. 77, 124 S.Ct. 1379, 1387 (2004)).  The exchange between the trial court and J. F., Sr. makes it clear that the trial court did not consider these factors.  As this court stated in *State v. Johnson*, 06-937, p. 13 (La.App. 3 Cir. 12/6/06), 944 So.2d 864, 944 So.2d 873:

> The trial court's dialogue with Defendant did not sufficiently address his literacy, competency, understanding, or volition;  nor did the trial court adequately advise Defendant of the dangers and disadvantages of self-representation.  We find that Defendant's right to counsel was

5

violated when the trial court permitted him to represent himself without adequate warning . . . .

In light of the cursory nature of the exchange in which J. F., Sr. was allowed to waive his right to counsel, the fundamental liberty interest at stake in the proceedings, and the fact that J. F., Sr. has only a seventh grade education, we cannot conclude that the waiver was knowing and intelligent. A review of the transcripts shows that his interests could have been better represented by interested and competent counsel.

CONCLUSION

As a result, we vacate the judgment awarding guardianship of the children to their paternal grandmother effective until each reaches his or her eighteenth birthday and making this the permanent plan. The matter is remanded to the trial court for further proceedings, including but not limited to appointment of counsel for J. F., Sr. or a knowing and intelligent waiver of that right. The court is to comply strictly with the requirements of the Louisiana Children's Code, including those set out in La.Ch.Code art. 702, et seq.

VACATED AND REMANDED.