NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-861

STATE OF LOUISIANA

VERSUS

GEORGE JAMESON GRAY III

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 9935-07
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Jimmie C. Peters, Judges.

AFFIRMED.

John Foster DeRosier, District Attorney
Carla Sue Sigler, Assistant District Attorney
14th Judicial District Court
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
Counsel for Appellee:
State of Louisiana

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**Counsel for Defendant/Appellant:**
**George Jameson Gray III**

**George Jameson Gray III**
**Avoyelles Correctional Center**
**1630 Prison Rd.**
**Cottonport, LA 71327**
**Counsel for Defendant/Appellant:**
**George Jameson Gray III**

**SAUNDERS, Judge,**

Defendant, George Jameson Gray III, was convicted by a jury of manslaughter on October 30, 2009. Defendant now appeals his conviction and sentence. For the reasons set forth, Defendant's conviction is affirmed, and his sentencing issues are addressed in the appeal bearing docket number 10-1059.

**FACTS:**

On March 28, 2007, Defendant stabbed and killed the victim, Samuel Hayes, Jr. Defendant and Hayes were friends. Defendant was homeless, and Hayes allowed him to sleep in a vehicle kept in his front yard.

Witness, Yolanda Huey Henney, testified that she was traveling west on 11th Street in Lake Charles late on the night of March 28 when she saw a vehicle parked on the left side of the street, facing east, with the headlights and interior lights on. She thought that the police were monitoring the well-known drug area. Regardless, Henney was on drugs at the time. As Henney approached, she recognized Hayes' vehicle, and she saw him sitting inside with Defendant on the passenger side. Although Henney apparently did not tell the police about seeing the knife in two taped interviews prior to trial, she testified that Defendant had a blue and silver knife on his lap, and she saw him pick it up and twirl it around. According to Henney, the two men appeared to be having an argument.

When Hayes offered to take Henney to the store, she approached the back seat of the vehicle. However, Hayes told Henney that Defendant was getting ready to get out of the front seat. Henney testified that Hayes also told her not to go to the other side of the vehicle yet. Henney then stated that she saw "fear in [Hayes'] eyes." Henney testified that Defendant then got out of the vehicle and approached the rear.

Further, according to Henney, Hayes also immediately got out of the car and stood by the driver's side door.

Henney then testified that as Defendant moved toward the back end of the driver's side of the vehicle, Hayes reached for a cane and said, "please don't make me do it." According to Henney, Hayes had already told her that Defendant had nicked him with the knife. Henney assumed that Hayes was cut on the hand, although she did not see a cut.[1] Henney then saw Hayes strike Defendant in the head with the cane.

Henney screamed for help. Howard Julian came out of a nearby house, told them to stop, and told Defendant to "go on about your business." Defendant ran to the driveway across the street with the knife in his hand. Hayes jumped into the vehicle, turned it on, and put it in drive, with the vehicle coming toward Henney. According to Henney, Defendant "ran from across the street and jumped through the window, the driver's side, with the knife," and stabbed Hayes. Henney then testified that Hayes put the car in park, jumped out of it, told Henney he was "hit," and fell to the ground, as Defendant ran.

Howard Julian, Hayes' cousin, also testified at trial. He testified that he went outside around midnight; Henney, whom he had known "about all [his] life," ran up to him and told him Defendant and Hayes were about to fight. Julian stated that he saw them at the back of the vehicle and he went to the car and told Hayes to get in it and go home. According to Julian, Hayes got in the driver's side and "was taking off" when Defendant came to the side of the vehicle, pushed Julian out of the way and "stabbed [Hayes] up in the heart" as Hayes "was driving off." Julian then testified

---

[1]The autopsy report showed a scrape on the back of Hayes' left hand. (Ex. S-57). A blood sample and DNA evidence showed the presence of Hayes' blood on the center armrest of the vehicle's console.

2

that Defendant ran toward 12th Street as Hayes got out of the car "to try to see which way [Defendant] went. And when he walked back and was coming back to his car, that's when he was going down on his knees and he laid back."

Julian did not recall seeing the cane Hayes customarily used, and he did not see Hayes hit Defendant. Hayes was dead when Corporal Michael Manuel of the Lake Charles Police Department arrived.

LeAnn Suchanek, DNA technical leader of the Southwest Louisiana Crime Lab, testified about evidence swabs taken from the scene. DNA evidence showed the presence of Defendant's DNA "from the driver's side A-frame on the outside of the vehicle." She did not find any of Defendant's DNA inside the vehicle. Two other "potential blood swabs taken from northwest of an area in front of a specific address," from what Suchanek presumed was the roadway, contained Defendant's DNA.

Sergeant Charles Welch of the Lake Charles Police Department interviewed Henney, Julian, and Defendant as part of his investigation of the homicide. Henney and Julian both told him Defendant committed the homicide with a knife. Sergeant Welch met with Defendant, who came from the hospital with an injury in the scalp area. The parties stipulated Defendant had eight staples in the head wound.

Defendant was very cooperative when Sergeant Welch and Detective Lisa McCullough interviewed him. Defendant gave a videotaped statement in which he claimed someone in a vehicle pulled up to him, and he opened the passenger door and leaned on the vehicle. When he walked to the driver's side, the man had exited the vehicle. Defendant "tussled with him," and the man hit Defendant in the head with what Defendant thought was a pipe wrench. Defendant fell, and he and the man wrestled some more. Defendant tossed the man from him, got up from the ground

3

near the driver's side of the vehicle, and ran. The man was armed with a knife. Defendant believed Sergeant Welch was joking when he said the man was dead.

The coroner, Dr. Terry Welke, testified Hayes had a cut to the left upper chest area that was approximately two inches long and went into the muscle. The wound was approximately one and one-half inches deep and "just injured muscle in the upper chest region." The second wound was approximately three inches deep. That stab wound "was about an inch and a half long, went into the chest, through the chest wall, and into a major pumping chamber of the heart called the left ventricle." According to Dr. Welke, the weapon had a single sharp edge. The first wound was "more of a slicing-type injury," while the second was "more of a direct impaling or jabbing into the trunk."

Hayes also had a scrape on the back of the knuckle of the left ring finger, along with a couple of scrapes underneath the left knee. Dr. Welke determined the cause of death to be "a stab wound of the trunk" with internal injuries that "involved the major pumping chamber of the heart." While Dr. Welke did not know what caused the scrape on Hayes' finger, he testified it could have possibly been caused by the edge of a knife. Toxicology reports showed the presence of cocaine and a blood alcohol level of .126 in Hayes' body.

After Defendant's conviction for manslaughter, the State filed a habitual offender bill. On January 29, 2010, Defendant was adjudicated a second felony offender and sentenced to fifty years at hard labor without benefit of probation or suspension of sentence.

**ASSIGNMENT OF ERROR NO. 1:**

4

Defendant claims the State failed to prove Defendant was not acting in self-defense when he stabbed Hayes in the chest after Hayes attacked him. Thus, he argues the evidence was insufficient to convict him of manslaughter. In the police interview just hours after the homicide, Defendant claimed he did not stab Hayes, but rather, was attacked by him and then fled the scene. He does not make that argument on appeal.

The Louisiana Supreme Court has said:

> "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).... [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville,* 448 So.2d 676, 678 (La.1984). Additionally, when circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocense." La. R.S. 15:438; *see State v. Jacobs*, 504 So.2d 817, 820 (La.1987) (all direct and circumstantial evidence must meet the *Jackson* test); *State v. Porretto,* 468 So.2d 1142, 1146 (La.1985) (La. R.S. 15:438 serves as an evidentiary guide for the jury when considering circumstantial evidence). Furthermore, in a case in which defendant asserts that he acted in self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. *State v. Brown,* 414 So.2d 726, 728 (La.1982). When defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense.

*State In re D.P.B.*, 02-1742, pp. 4-5 (La. 5/20/03), 846 So.2d 753, 756-57 (footnote omitted).

Although charged with second degree murder, Defendant was found guilty of manslaughter, a homicide "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and

5

cool reflection" or "a homicide committed, without any intent to cause death or great bodily harm." La.R.S. 14:31. The homicide is justified "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20(A)(1).

In *State v. Johnson*, 06-1263 (La.App. 3 Cir. 2/7/07), 948 So.2d 1229, *writs denied*, 07-467, 07-509 (La. 10/12/07), 965 So.2d 398, 399, the victim was stabbed when he tried to force his way into the defendant's apartment. The defendant said the victim had a gun, and he had severely beaten the defendant a few weeks prior to the homicide.

This court noted:

> [W]hen an accused raises self-defense, the burden is on the State to prove, beyond a reasonable doubt, that he did not act in self-defense. "The determination of a defendant's culpability focuse[d]on a two fold inquiry: 1) whether, from the facts presented, the defendant could have reasonably believed his life to be in imminent danger, and 2) whether deadly force was necessary to prevent the danger." *State v. Mills*, 04-489, p. 7 (La.App. 5 Cir. 3/29/05), 900 So.2d 953, 959, *writ denied*, 05-1470 (La. 1/13/06), 920 So.2d 235). "Factors to consider in determining whether a defendant had a reasonable belief the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing and the Defendant's knowledge of the assailant's bad character." *State v. Nelson*, 34,077, p. 6 (La.App. 2 Cir. 12/6/00), 775 So.2d 579, 584.

*Johnson*, 948 So.2d at 1234. This court held the defendant's "use of force was disproportionate to the circumstances of someone knocking on his door at eleven o'clock at night." *Johnson*, 948 So.2d at 1237. The defendant could have simply not opened the door, or he could have called 911. Consequently, this court vacated the defendant's conviction for second degree murder but convicted him of manslaughter, disregarding his claim of self-defense.

6

Here, Hayes had already injured Defendant by hitting him in the head, and he had already reentered his vehicle and was driving away at the time of the stabbing. We find that it makes no difference whether Defendant came from across the street, as Henney testified, or whether he came from the rear of the vehicle, as Julian testified, to reach through the driver's window and stab Hayes. Although Defendant argues in his brief he might have reasonably believed he was in danger of being run over by Hayes' vehicle, he offered no evidence to that effect. The possibility of that belief is mere speculation insufficient to establish justification for Defendant's acts.

Likewise, Defendant presented no evidence of any knowledge of Hayes' bad character. Although Defendant could have reasonably believed his life was in danger because of the substantial blow Hayes had just applied to his head, he made no showing that deadly force was necessary to prevent further injury.

Henney testified that she saw Hayes strike Defendant across the head, and then Hayes "jumped in his car, turned his car on, and he put it in drive." She was standing in front of the car and was trying to move out of the way as the vehicle began to move. Defendant relies on this testimony to suggest he himself may have been in imminent danger of being run down by the vehicle. However, Defendant presented no evidence that he reasonably believed Hayes would use the vehicle as a weapon, and he presented no evidence to show he was in an area of danger as Hayes drove away. Neither Henney's testimony that Defendant was across the street nor Julian's testimony that Defendant was at the back of the vehicle when Hayes began to drive away support a reasonable belief that Hayes intended further harm to Defendant. Thus, it is clear that the imminent danger to Defendant had ended with the striking of the blow to his head, and the situation between them had ended when Hayes

7

reentered his vehicle and made an effort to leave. All Defendant had to do was allow Hayes to drive away. Accordingly, we find that Defendant failed to show he acted in self-defense, and the evidence was sufficient to convict him of manslaughter.

**ASSIGNMENT OF ERROR NO. 2:**

Defendant claims his conviction was obtained in violation of his constitutional right to represent himself. This assignment has no merit.

The record indicates a hearing took place on August 14, 2009 in response to a letter Defendant wrote to the trial judge asking to recuse his court-appointed counsel because Defendant and counsel did "not get along." Court-appointed counsel agreed that he and Defendant had personality conflicts and said that he had "shown impatience with [Defendant] on several times." Counsel supported Defendant's motion to relieve him of representation.

After hearing testimony from Defendant and counsel, the trial judge told Defendant, "[y]ou haven't given me enough for me to relieve [court-appointed counsel]. I'm sorry you don't like him." When Defendant commented, "I would rather represent myself," the trial judge responded, "[y]ou aren't going to represent yourself."

Defendant never filed any motion to represent himself; he simply wanted this attorney removed from his case. Review of the transcript of the entire hearing implies that Defendant still wanted court-appointed counsel, he just did not want *this* counsel. Defendant is not entitled to counsel of his choice; rather, he "only has the right under the federal constitution to effective representation." *State v. Reeves*, 06-2419, p. 47 (La. 5/5/09), 11 So.3d 1031, 1062, *cert. denied*, __ U.S. __, 130 S.Ct. 637 (2009). Defendant never asked the court to represent himself. He simply commented that he

8

would rather represent himself than be represented by his present counsel. This comment does not sufficiently express a desire for self-representation. Thus, Defendant may not complain on appeal that the trial court erroneously denied his right to represent himself.

Moreover, even if Defendant did express a desire to represent himself, that choice "must be knowingly and intelligently made and the assertion of the right to self-representation must be clear and unequivocal." *State v. Francis*, 07-373, p. 3 (La.App. 3 Cir. 10/3/07), 966 So.2d 1096, 1099. The *Francis* court, citing other cases from this circuit, the Louisiana Supreme Court, and the United States Supreme Court, discussed the standard for determining whether a defendant has validly waived his right to counsel:

> Before a defendant may waive his right to counsel, the trial court must determine whether the defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. *State v. Hegwood*, 345 So.2d 1179 (La.1977). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *State v. Harper*, 381 So.2d 468 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether a defendant has validly waived his right to counsel. *State v. Carpenter*, 390 So.2d 1296 (La.1980). However, the record must establish that the accused knew what he was doing and that his choice was made "with eyes open." *Id.* at 1298, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

*State v. Hayes*, 95-1170, pp. 4-5 (La.App. 3 Cir. 3/6/96), 670 So.2d 683, 685-86. *See also State v. Johnson*, 06-937 (La.App. 3 Cir. 12/6/06), 944 So.2d 864 and *State v. Whatley*, 03-655 (La.App. 3 Cir. 11/5/03), 858 So.2d 751.

9

*Francis*, 966 So.2d at 1099. Thus, Defendant's isolated comment that he would rather represent himself in no way constitutes a clear and unequivocal election of a choice that was intelligently and voluntarily made. Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3:

Defendant complains in this appeal that his fifty-year sentence at hard labor is excessive. However, Defendant was not sentenced in trial court docket number 9935-07, which is the basis for this appeal. Rather, Defendant's sentence was imposed in trial court docket number 7105-10, the subject of this court's appeal bearing docket number 10-1059. Accordingly, our review of Defendant's sentence is properly addressed in 10-1059, and thus, it is not discussed here.

## DECREE:

Defendant's manslaughter conviction is affirmed.

**AFFIRMED.**